**Daniel Lamonte HOLIFIELD, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**Nos. 09–89–276 CR, 09–89–277 CR.**

Court of Appeals of Texas,
Beaumont.

April 8, 1992.

Rehearing Denied April 30, 1992.

Steve Hebert, Baytown, for appellant.

Michael Little, Dist. Atty., Steve Greene, Asst. Dist. Atty., Liberty, for State.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

OPINION

WALKER, Chief Justice.

These appeals are taken from two convictions for the felony offense of Attempted Murder. The charges involved a single incident in which two victims were injured by either a single or consecutive shotgun blasts. Appellant was charged with Attempted Murder in separate indictments with each indictment containing a separate count alleging the felony offense of Aggravated Assault. Trial commenced before a jury with appellant pleading guilty to the Aggravated Assault counts, but not guilty to the Attempted Murder counts. Nevertheless, the State proceeded to trial on the Attempted Murder counts.

The jury found appellant guilty of both charges of Attempted Murder and sentenced appellant to ten (10) years confinement in the Institutional Division of the Texas Department of Criminal Justice in each case, the sentences to run concurrently. Appellant raises six points of error on appeal. We will group and discuss appellant's six points of error out of order.

Appellant's brief sets out points of error one, three, and five as follows:

Point of Error One: The trial court erred in allowing the State, during the guilt or innocence phase of the trial, to introduce into evidence State's exhibit number 35.

Point of Error Three: The trial court committed reversible error when it allowed the State to mention that appellant had a prior felony charge reduced to a misdemeanor.

Point of Error Five: It was reversible error to have allowed the State to prove that appellant had previously been convicted of the misdemeanor offense of Attempted Burglary of a Motor Vehicle.

After closely examining the record before us, we find that in each of the instances referred to us in the statement of facts where these alleged errors occurred, appellant did not object to the admission of the evidence of which he complained. Thus, any error in admitting the alleged erroneous testimony or exhibits is waived. TEX. R.CRIM.EVID. 103(a)(1); TEX.R.APP.P. 52. *See, Turner v. State,* 805 S.W.2d 423 (Tex. Crim.App.) *cert. denied,* — U.S. —, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991); *Crocker v. State,* 573 S.W.2d 190 (Tex.Crim.App. 1978). Points of error one, three, and five are overruled.

Appellant's second point of error avers, "The trial court erred in permitting the State to use inadmissible hearsay to establish its case over defense objections." The record before us clearly reflects that the State's lone rebuttal witness was Ms. Linda Roberts. Ms. Roberts was called by the State in order to impeach the cross-examination testimony of a defense witness, Mr. Michael Melton, in which Mr. Melton stated that he (Melton) did not know a Linda Roberts or Linda Whitmire, nor did he (Melton) ever tell anyone that, on the night of the shooting, appellant stated that he (appellant) was going to shoot the victims.

Appellant's counsel objected that Ms. Roberts' testimony was inadmissible as being hearsay on hearsay. The State countered that Mr. Melton's prior inconsistent statement could properly be impeached by Ms. Roberts' testimony. The issue of Ms. Roberts' testimony concluded as follows:

Mr. Brown (for appellant): Your Honor, it's a confession he is trying to get in the back door.

Mr. Greene (the State): I don't care if you limit the offer to it being impeachment of Michael Melton, but it is admissible for that purpose if for nothing else. The Court: It will be limited for impeachment purposes.

Mr. Brown: I object to that limitation, Your Honor, and also, for the record, object to the admissibility of that statement from this witness whose name is somebody Roberts.

Mr. Greene: Linda Roberts.

Mr. Brown: Linda Roberts. On the grounds that it is hearsay on hearsay and that is clearly inadmissible.

The Court: Bring the jury in.

Mr. Brown: Can I get a ruling on my objection?

The Court: Your objection is overruled.

Ms. Roberts was then permitted to testify before the jury that Michael Melton had discussed appellant's pending charges with her approximately two weeks before trial and that Mr. Melton told her "[t]hat Lamonte (the appellant) said, I am gonna shoot the MF's, got his gun and did just that.... I am going to kill the MF's, got his gun and did just that."

■ The record before us reflects that appellant's only objection to Ms. Roberts' testimony was based upon hearsay. The admissibility or non-admissibility of hearsay is controlled in TEX.R.CRIM.EVID. 801–806. An entirely separate portion of the rules deals with "Witnesses." TEX.R.CRIM. EVID. 601–615. Specifically, Rule 612 is entitled, "Prior Statements of Witnesses; Impeachment and Support." While appellant's objection to Ms. Roberts' testimony on the grounds of hearsay was sufficient at the point it was made, once the State countered the hearsay objection by limiting the offer to impeachment purposes only, this limited offer had the effect of putting the burden back on appellant to make a specific objection to such impeachment testimony. The reason for this is because, introduced

for impeachment purposes only, Ms. Roberts' testimony would not constitute hearsay because it would not be offered to prove the truth of the matter stated. Tex. R.Crim.Evid. 801(d). *See, Sandow v. State,* 787 S.W.2d 588, 595 (Tex.App.—Austin 1990, pet. ref'd). Although appellant's second point of error uses the words "inadmissible hearsay," his argument and authorities in his brief address impeachment with prior inconsistent statements and the various predicate requirements of Rule 612(a). We reiterate the point that appellant's sole objection to Ms. Roberts' testimony was that it was hearsay and, once the trial court limited the testimony to impeachment purposes only, it *then* became necessary for appellant to specifically object to the fact that the State had not satisfied the predicate requirements. Appellant did not so object thus waiving any error in admitting Ms. Roberts' testimony. Tex.R.Crim. Evid. 103(a)(1); Tex.R.App.P. 52.; *Turner, supra; Crocker, supra.* Point of error two is overruled.

Appellant presents his fourth and sixth points of error as follows:

Point of Error Four: The trial court committed reversible error by allowing the State to use extrinsic evidence to improperly establish general criminal conduct of appellant.

Point of Error Six: It was reversible error to have allowed the State the use of collateral matters during the punishment phase of the trial which had nothing to do with the offense for which appellant was being tried.

■ We note at the outset that all of the testimony of which appellant complains in these final two points of error was admitted during the punishment phase of the trial. During its punishment case-in-chief, the State recalled Linda Roberts to the stand, and immediately followed with testimony from Ms. Roberts' daughter, Misty McGee. The essence of the Roberts/McGee testimony was that about one year earlier when appellant and Ms. Roberts were friends, Ms. Roberts let appellant supervise Misty's horseback riding activities. On one particular day, Ms. Roberts

had specifically instructed appellant to allow Misty to ride "Mikey," a very gentle horse that Misty had ridden before, but not "Barney" a horse that had been ridden infrequently. Instead, appellant put Misty on "Barney" and, after a bit of trouble, Misty asked to get off of the horse. Before Misty could dismount, appellant struck the horse with a long switch. The horse bolted and Misty fell off striking a tree. Misty suffered a broken pelvis, was hospitalized three days, and on crutches for five months.

Appellant objected to the Roberts/McGee testimony as not being permitted under the Code of Criminal Procedure at the punishment phase of the trial; as not being relevant to a case of attempted murder; and, if deemed relevant, that the probative value of the evidence was outweighed by its prejudicial effect. The trial court overruled appellant's objections and permitted the jury to hear the Roberts/McGee testimony.

Tex.Code Crim.Proc.Ann. art. 37.07, sec. 3(a) (Vernon Supp.1992) states, in pertinent part:

(a) ... [E]vidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including the prior criminal record of the defendant, his general reputation and his character....

In *Huggins v. State,* 795 S.W.2d 909, 911 (Tex.App.—Beaumont 1990, pet. ref'd), we discussed the scope of art. 37.07, sec. 3(a) by concluding:

We hold that the language that evidence may, as permitted by the Rules of Evidence, be offered by the State and the defendant as to any matter the court deems relevant to sentencing is additional to and separate and independent of the "prior criminal record of the defendant." This relevant evidence is also independent of and separate from evidence of the defendant's general reputation and his character. TEX.R.CRIM.EVID. 401 defines relevant evidence: the evidence is relevant if it has any *tendency* to make the existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the evidence. We note that the language used is "any tendency to make the existence of any fact that is of consequence to the determination of the action." Part of the determination of the action, of course, was the assessment of punishment. (emphasis in original)

We further held in *Huggins* that there was no realistic difference or distinction between the language quoted above from art. 37.07, sec. 3(a) and the very similar language contained in art. 37.071, sec. 2(a) [Procedure in Capital Case] which provides, in pertinent part:

> In the [sentencing] proceeding, evidence may be presented by the state and the defendant or the defendant's counsel as to any matter that the court deems relevant to sentence, including evidence of the defendant's background or character or the circumstances of the offense that mitigates against the imposition of the death penalty.

*Huggins, supra* at 911.

In the instant case, we find no abuse of discretion by the trial court in admitting the Roberts/McGee testimony concerning the alleged prior bad act of appellant. Such evidence obviously is, contrary to appellant's argument, permitted by the Code of Criminal Procedure. Furthermore, such evidence is relevant to the determination of a proper punishment by the factfinder, and if the probative value of a prior unadjudicated *criminal* act is not outweighed by its inherently prejudicial nature (as was the case in *Huggins*), then certainly the probative value of what appears to be a bad or mean-spirited act cannot be outweighed by its prejudicial effect. We, therefore, overrule points of error four and six and affirm the judgment and sentence of the trial court.

AFFIRMED.

BURGESS, Justice, dissenting.

I respectfully dissent to the majority's disposition of the extraneous offense points of error. I believe the introduction was error, *see Huggins v. State*, 795 S.W.2d 909

(Tex.App.—Beaumont 1990, pet. ref'd) (concurring opinion) and I cannot determine beyond a reasonable doubt that the evidence made no contribution to an assessment of the punishment, *see Hunter v. State*, 805 S.W.2d 918 (Tex.App.—Beaumont 1991, pet. granted) (dissenting opinion). Furthermore, I believe Judge Onion's analysis of TEX.CODE CRIM.PROC.ANN. art. 37.07 § 3(a) (Vernon Supp.1992) in *Grunsfeld v. State*, 813 S.W.2d 158 (Tex.App.—Dallas 1991, pet. granted), is well reasoned and correct. *See also Slott v. State*, 824 S.W.2d 225 (Tex.App.—Beaumont 1992, pet. filed). Since the majority feels otherwise, I respectfully dissent.